# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

|                                         |   |                                  |
|-----------------------------------------|---|----------------------------------|
| DORIS C. BURNS,                         | ) |                                  |
|                                         | ) | Civil Action No. 5:09cv00108     |
| *Plaintiff*                             | ) |                                  |
| v.                                      | ) | **REPORT AND**                   |
|                                         | ) | **RECOMMENDATION**               |
| MICHAEL J. ASTRUE,                      | ) |                                  |
| Commissioner of Social Security,        | ) | By:  Hon. James G. Welsh         |
|                                         | ) | U. S. Magistrate Judge           |

Plaintiff, Doris Burns, brings this action pursuant to 42 U.S.C. § 405(g) challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying her claims for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended, ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act. 42 U.S.C. §§ 416 and 423 and 42 U.S.C. §§ 1381 *et seq.* respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g).

On May 11, 2010 the Commissioner filed his Answer along with a certified copy of the Administrative Record ("R."), which included the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By an order of referral entered on April 27, 2010, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Despite the passage of more than three months since the Commissioner's submission of the administrative record, no brief has been filed by the plaintiff addressing the basis

for her contention that the Commissioner's decision is not supported by substantial evidence or why the decision should be otherwise reversed or remanded.[1] Likewise, the plaintiff has made no written request for oral argument.[2]

Given this longstanding briefing failure and the attendant failure of plaintiff's counsel to prosecute the appeal in this case, dismissal of the plaintiff's appeal with prejudice would appear to be warranted. *See Chandler Leasing Corp, v. Lopez*, 669 F.2d 919 (4th Cir. 1982). The facts of this case, however, suggest that dismissal may be too severe a sanction. *Id.* As the Fourth Circuit wrote in *Reizakis v. Loy*, 490 F.2d 1132, 1135 (1974):

> A district court unquestionably has authority to grant a motion to dismiss for want of prosecution. Fed. R. Civ. P. 41(b). Indeed, . . . the trial court can take such action on its own motion. But courts interpreting the rule uniformly hold that it cannot be automatically or mechanically applied. Against the power to prevent delays must be weighed the sound public policy of deciding cases on their merits. (Citation omitted). Consequently, dismissal "must be tempered by a careful exercise of judicial discretion." *Durgin v. Graham*, 372 F.2d 130, 131 (5th Cir. 1967). While the propriety of dismissal ultimately turns on the facts of each case, criteria for judging whether the discretion of the trial court has been soundly exercised have been stated frequently. Rightfully, courts are reluctant to punish a client for the behavior of his lawyer. *Edsall v. Penn Central Transportation Co.*, 479 F.2d 33 35 (6th Cir. 1973). Therefore, in situations where a party is not responsible for the fault of his attorney, dismissal may be invoked only in extreme circumstances. *Industrial*

---

[1] Pursuant to paragraph 1 of the court's Standing Order No. 2005-2, the plaintiff in Social Security must file, within thirty a days after service of the administrative record, "a brief addressing why the Commissioner's decision is not supported by substantial evidence or why the decision otherwise should be reversed or the case remanded." Standing Order No. 2005-2 was superceded on April 8, 2010 by the court's adoption of a series of Local Rules, including WDVa Gen. Rule 4(c)(1), which similarly directs that the plaintiff *must file* his or her supporting brief within thirty days. Although the plaintiff has not complied with this pleading requirement, her Complaint sets forth with minimal specificity the reasons she believes the Commissioner's final decision is legally deficient. In this instance, therefore, the plaintiff's pleading is deemed to be marginally in compliance with Standing Order No. 2005-2 and WDVa Gen. R. 4(c)(1).

[2] Both paragraph 2 of the court's Standing Order No. 2005-2 and WDVa Gen. R. 4(c)(2) direct that a plaintiff's request for oral argument in a Social Security case, must be made in writing at the time his or her brief is filed.

*Building Materials, Inc. v. Interchemical Corp.*, 437 F.2$^d$ 1336, 1339 (9th Cir. 1970). Indeed, it has been observed that "the decided cases, while noting that dismissal is a discretionary matter, have generally permitted it only in the face of a clear record of delay or contumacious conduct by the plaintiff." *Durham v. Florida East Coast Ry. Co.*, 385 F.2$^d$ 366, 368 (5th Cir. 1967).

In this case, the defendant has suffered no substantive prejudice; the plaintiff's Complaint sets forth with minimal specificity the basis for her appeal, and the administrative record shows that the plaintiff remains insured at least through the date of the Commissioner's final decision. Although there has been dilatoriness on the part of her counsel, nothing in the record suggests some personal responsibility by the plaintiff for the briefing failure in this case. Consequently, in this instance it is concluded that dismissal is an inappropriate remedy; therefore, after reviewing the administrative record the following report and recommended disposition is submitted.

**I.      Summary**

The plaintiff in this case was fifty-one years of age [3] at the time of the hearing; she attended school through high school, and her past relevant work included jobs as a production worker, retail cashier and stock clerk, waitress and housekeeper. (R.30,104-125,128-137,140-141,157-164, 172.) As outlined in the disability reports, the hearing testimony and the medical record, this left-hand dominant plaintiff's basic contention is that in December 2007 she fell on black ice and sustained a significant closed left olecranon ("funny bone") fracture, which required surgical stabilization by

---

[3] At this age the plaintiff is classified as a "*person closely approaching advanced age*." If a person is closely approaching advanced age (age 50-54), the agency we will consider the individual's age along with any severe impairment(s) and any limited work experience which may seriously affect the individual's ability to adjust to other work. 20 C.F.R. §§ 404.1563(d) and 416.920(c).

orthopaedic wiring and pins, and as the result of this fall she also re-injured her back and developed right upper extremity tendinitis. (R.11-12,21-27,140,166,203-210,212,289-297,315,320.) In combination these conditions, she contends, are functionally disabling due to the attendant chronic pain and related symptoms in her back and both upper extremities and due to the drowsiness brought-on by her necessary use of multiple prescription pain medications. (R.24-26,140,166,182, 186.) The medical record, however, lacks objective evidence to support her claim that these conditions, either singularly or in combination, and the attendant pain are of disabling intensity. [4]

## II.     Standard of Review

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990); *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966). "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard. " *Mastro v. Apfel*, 270 F.3$^d$ 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze*, 368 F.2$^d$

---

[4] A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

640, 642). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Id*. (quoting *Craig*, 76 F.3$^d$ at 589). The ALJ's conclusions of law are, however, not subject to the same deferential view and are to be reviewed *de novo*. *Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000).

### III.    Administrative History

The record shows that the plaintiff protectively filed her applications on December 11, 2007, alleging disability as of December 6, 2007. (R.9,90-100,125,126-155,165-174,176-186.) Her claims were denied both initially and on reconsideration. (R.9,35-44,49-61.) Pursuant to the plaintiff's timely request, an administrative hearing on her applications was held on August 5, 2009 before an administrative law judge ("ALJ"). (R.9,16-34,62-69,74-86.) At the hearing, the plaintiff was present; she testified; she was represented by counsel, and vocational testimony was given by Barry Hensley, Ph.D. (R.9,16,19-33,46,48,71-73.) By written decision dated September 29, 2009, the plaintiff's applications were once again denied, and her subsequent request for Appeals Council review was also denied. (R.1-5,6-15.) The ALJ's unfavorable decision, therefore, now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

### IV.    Facts

With a medical history, which included prior C/6 disc surgery and residual shoulder discomfort due to a left shoulder injury, an unusually slow heart rate, an inherited immune system abnormality and a recent neck re-injury in a motor vehicle accident, on December 6, 2007 the plaintiff sustained an acute left elbow fracture as the result of a fall on black ice. (R.198-213,214-220,222, 224,226-227,239,289-290, 292-293,296.) She is left-hand dominant, and at the time of her elbow injury was forty-nine years of age. (R.205,207,296,298.) Intramuscularly she received Demerol and Visteril in the emergency room following this injury; she was then admitted to the hospital, and her injury was repaired by open reduction orthopaedic surgery involving internal fixation with a tension band and K-wires. (R.203,205,292-295.) She tolerated the surgery without any complication; she was discharged on pain medication one day later, and follow-up X-rays on December 10 confirmed her elbow to be in proper anatomical position and alignment but with some fluid in the joint space. (R.192-197,203-204,209-210,258,267,291,296-297.) Multiple post-surgery X-ray studies over the next six months and the office notes of David Cohen, MD, her orthopaedic surgeon, for the same period document that the plaintiff's elbow fracture healed without any medically significant complication; however, the plaintiff did report report ongoing elbow pain, weakness and a limited range of motion. (R.190-193,234,239,256-259,264-274,304,309,315,317, 320,330-331,334,336-337,348,425,428,453,512-513.)

As a rehabilitation modality, in January the plaintiff was referred by Dr. Cohen for a two-month physical therapy regime. (R.262,279,286.) Although this treatment improved the plaintiff's grip strength by 38 percent, her left elbow range of motion continued to be significantly limited. (R.275-285,287-288.) As Dr. Cohen noted in his records June 13, 2008, since her left elbow injury

and its surgical repair, the plaintiff had continued to "[have] difficulty" with pain and the deep hardware implants. (R423; *see also* R.351.)

At the plaintiff's request, these implants were subsequently removed without complication during a July 11-12, 2008 hospitalization. (R.339-342,344,356-357,360-361,368-369,373,406-418, 433-434, 437-438,445-447,450,477,483-495.) When seen by Dr. Cohen during a post-operative follow-up office visit five days later, the plaintiff's incision was noted to be well-healed; she continued to exhibit a limited range of elbow motion, and she was noted to be recovering at home on pain medication. (R.510-511,515-516.) Six weeks later the plaintiff had achieved full range of elbow motion in all planes with no pain and in August Dr. Cohen released the plaintiff to perform any activity without restriction. (R.517-519.)

In November, however, she returned to see Dr. Cohen and reported the development of forearm numbness and the gradual onset of elbow pain that "waxes and wanes in severity throughout the day." (R.532-533,537-539.) By avoiding aggravating activities and continuing her stretching exercises, on December 30, 2008 Dr. Cohen found this problem to be resolving; he noted that "overall the [plaintiff had] done well," and he released her with instructions to return in the event her symptoms worsened or persisted. (R.529-530,540-541.)

Two months later, in February 2009, the plaintiff was seen on Dr. Cohen's referral by Olumide Danisa, MD, with complaints of a back pain condition, which she related to her December 2008 fall. (R.536,545.) X-ray studies, an MRI and Dr. Danisa's physical examinations in February

7

and again in March disclosed no "objective evidence of weakness, sensory loss, dysesthias, or incapacitation."[5] (R.534-536,543-545.)

As part of the agency's consideration of the plaintiff's application, she was seen for a consultive examination and functional assessment by Christopher Newell, MD in March 2008, and in July an assessment of her residual functional capacity was made by a state agency reviewer.

As part of his clinical examination and review of up-to-date elbow and cervical spine X-rays, Dr. Newell found the plaintiff to have a "well-healed" surgical scar, "mild" elbow tenderness, "very mild" left upper arm atrophy, and "some decrease" in her left elbow range-of-motion. (R.241-247.) This condition he concluded, functionally limited the plaintiff to lifting no more than 10 lbs. regularly, 20 lbs. occasionally, and only occasional reaching, grasping, etc. with her left upper extremity. (R.246.) He found her to have no cervical or other spinal limitation, and functionally he concluded she had no sitting, standing, walking, postural, or right upper extremity restriction. (R.241-246.)

Following removal of the orthopaedic hardware, the state agency reviewer's later functional assessment was somewhat less limited. (R.500-506.) Although the record, in his opinion, clearly indicated that the plaintiff should avoid heavy lifting, he considered her "good [hand] use and the

---

[5] Later Page Memorial Hospital emergency room records dated 06/08/2009 also contain no suggestion of such an objective basis for these complaints. (R.523-528,546-550.)

negative [shoulder] findings" to demonstrate an ability to perform a full range of light work. [6] (*Id*.)

## V.   ANALYSIS

In her complaint the plaintiff asserts two basic claims of administrative error. She alleges that the ALJ erred by inadequately considering the medical evidence from her treating physicians and by concluding that her back condition was not of disabling severity. [7] A review of the record and the ALJ's decision fail to support either of these contentions.

In his decision, the ALJ specifically recognized that the plaintiff sustained a significant left elbow fracture injury in December 2007 and that she has degenerative disc disease. (R.11-12.) Following the agency's standard sequential decision-making process, he next determined that neither of these conditions was of listing-level severity. (R.12.) After then reviewing the entire medical record and evaluating the plaintiff's symptoms, the ALJ concluded that the plaintiff possessed the residual functional capacity to perform a full range of work at a light exertional level.

---

[6] "*Light work* involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b) and 416.967(b)

[7] In her complaint the plaintiff appears to concede implicitly that her elbow injury was controlled by treatment, including the two orthopaedic surgeries, and therefore, this condition was not of disabling severity for one year as required by 42 U.S.C. § 423 and 20 C.F.R. § 404.1509 and § 416.909.

As a part of his assessment of the plaintiff's elbow and back disorders, the ALJ concluded that these conditions could be reasonably expected to produce pain and other subjective symptoms. (R.12-13.) Then, in accordance with the agency's established two-step process, he evaluated the plaintiff's statements about the intensity, persistence and limiting effects of her pain and related symptoms in light of the objective medical record. (R.12-14.) It was his conclusion that her statements were not credible to the extent they were inconsistent with the work at a light exertional level. (R.14.) In making this credibility finding, the ALJ specifically acknowledged the plaintiff's hearing testimony concerning the significant degree to which she is limited due to pain and other subjective symptoms. However, he found this testimony to be significantly inconsistent with the whole medical record, including *inter alia* the modest amount of degenerative disc disease identified either by the MRI study in February 2008 or by Dr. Newell as part of his consultive examination in March, the absence of any significant pain complaints to Dr. Cohen after his removal of the orthopaedic hardware in her elbow, her minimal residual elbow range-of-motion limitation, her minimal residual loss of left upper extremity strength, and the absence (as Dr. Danisa noted) "of any objective evidence of weakness, sensory loss, dysesthesias, . . . incapacitation" or correlation of "[her] subjective pain with objective findings." (R.13-14.)

In summary, there is simply no objective evidence in the record, either from Dr. Cohen, Dr. Danisa or any other treating or examining source, which supports the plaintiff's claim of a disabling physical condition. The court is constrained, therefore, to conclude that there is substantial evidence in the record to support the ALJ's finding that plaintiff's physical problems do not prevent her from performing light work activity.

This conclusion should not be read to suggest that the plaintiff does not suffer from pain related to degenerative disc disease and similar residual discomfort related to her elbow injury. The medical record documents both conditions; however, it also more than amply supports the ALJ's conclusion that these conditions, either singularly and in combination, are not of sufficient severity to be reasonably expected to result in a totally disabling condition.

**VI.     Proposed Findings of Fact**

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. Dismissal of the plaintiff's appeal pursuant to Rule 41(b) is not warranted by the facts and circumstances of this case;

2. All decisionally relevant findings in the Commissioner's final decision are supported by substantial evidence;

3. The plaintiff's elbow injury was properly found to be a *severe* condition, and its severity was properly assessed and evaluated;

4. The plaintiff's degenerative disc disease was properly found to be a *severe* condition, and its severity was properly assessed and evaluated;

5. The Commissioner's final decision gave the requisite consideration and weight to all treating source opinions concerning the nature and severity of the plaintiff's medical conditions and her attendant level of functioning;

6. The Commissioner's final decision gave the requisite consideration and weight to all non-treating source opinions concerning the nature and severity of the plaintiff's medical conditions and her attendant level of functioning;

7. The Commissioner's final decision gave the requisite consideration and weight to the plaintiff's statements and evidence about the severity, persistence and limiting effects of her pain and related symptoms;

8. Substantial evidence in the record supports the findings of the ALJ that through the decision date the plaintiff was capable of work at a light exertional level and was not disabled within the meaning of the Act;

9. The plaintiff has not met his burden of proving a disabling condition on or before the decision date; and

10. The final decision of the Commissioner should be affirmed.

**VII. Recommended Disposition**

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

**VIII. Notice to the Parties**

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law**

**may become conclusive upon the parties**.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 1st day of September 2010.

    /s/   *James G. Welsh*
United States Magistrate Judge